# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:21-cv-336-MOC-DSC

| | |
|---|---|
| SHARON HADDEN, | )<br>) |
| Plaintiff, | )<br>) |
| vs. | )    **ORDER** <br>) |
| UNITED PARCEL SERVICE, INC. | )<br>) |
| Defendant. | )<br>) |

**THIS MATTER** comes before the Court on a Motion for Partial Dismiss for Failure to State a Claim, filed By Defendant United Parcel Service, Inc. (Doc. No. 5).

## I. BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff filed this action in Mecklenburg County Superior Court on June 3, 2021, bringing the following claims against her former employer Defendant United Parcel Service, Inc.: (1) racial discrimination, retaliation, and hostile work environment on the basis of race, in violation of 42 U.S.C. § 1981; (2) unlawful racial discrimination and hostile work environment based on race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; (3) unlawful racial discrimination and hostile work environment based on sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; (4) unlawful discrimination and hostile work environment under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112; and (5) retaliation on the basis of race, sex, and disability, under Title VII; (6) negligent hiring, supervision, and retention under North Carolina common law; and (7) intentional infliction of emotional distress under North Carolina law.

Defendants removed the action to this Court on July 12, 2021. On July 19, 2021,

1

Defendant filed a motion to dismiss Plaintiff's claims for sex discrimination and hostile work environment (Plaintiff's Third Cause of Action) and intentional infliction of emotional distress (Plaintiff's Seventh Cause of Action). Plaintiff has filed a Response, and Defendant has filed a Reply. This matter is therefore ripe for disposition.

Plaintiff alleges the following factual allegations, which are taken as true for the purpose of Defendant's partial motion to dismiss[1]:

Plaintiff first began employment with UPS in 1995. Plaintiff's performance at UPS was consistently exceptional. In 2011, Plaintiff was involved in an on-the-job accident that resulted in the death of another individual while Plaintiff was driving a UPS truck. Due to the psychological and emotional trauma associated with the accident, Plaintiff was diagnosed with a health condition. Accordingly, Plaintiff had a disability as defined under the American Disabilities Act and requested reasonable accommodations. Plaintiff's request included an accommodation in the form of allowing Plaintiff to drive a smaller truck while making deliveries. Due to another diagnosed medical condition that caused Plaintiff difficulty with ambulating stairs, Plaintiff also requested to not be assigned routes that required her to ambulate stairs. Plaintiff's request for reasonable accommodations was granted in 2011 and Plaintiff was able to perform her duties without issue.

In 2018, UPS began discriminating against Plaintiff on the basis of her race, sex, and disability. Specifically, on March 6, 2018, a UPS supervisor called Plaintiff a monkey. On March 5, 2019, Plaintiff made a complaint of race and gender discrimination to UPS supervisors Michael Smith and Charles Keith Davis, and Union Representative Dave Ramsey. Plaintiff

---

[1] The allegations are taken verbatim from Plaintiff's Complaint, except that the paragraph numbers have been omitted.

complained of discrimination and specifically reported that after three (3) years of parking in the back of the facility due to it being dark when Plaintiff arrived at work at 2:45 a.m., Plaintiff was told she could no longer park in the back of the facility. Importantly, because of the time she arrived at work, Plaintiff would park in the back of the facility for safety reasons. Although Plaintiff was told she could not park in the back of the building, other non African-American women employees were allowed to continue to park in the back of the facility

After the March 5, 2019, meeting, Plaintiff experienced retaliation by UPS supervisor Bryan Crickard, who would intentionally manipulate her packages in a way that would cause her to have to search for the packages, and in turn cause her to be late with her deliveries Many part-time supervisors were witnesses to this retaliation because they had to help Plaintiff search for her packages to be delivered.

Then, on March 21, 2019, Plaintiff asked Bryan Crickard to leave her packages in one location as he had done with all other employees. Bryan Crickard's response was "I will continue to load air on any truck I want." Plaintiff then asked why she was being singled out. Bryan Crickard responded, "Because." Plaintiff responded, "I don't need your help loading my truck. Please don't touch my packages."

After the verbal discussion between Bryan Crickard and Plaintiff, Plaintiff reported the issue via a text message to her supervisors, Charles Keith Davis and Bryan Crickard, stating, "Keith, I can't work under this stress, my blood pressure is high, my head hurts really bad, and my eye is twitching. I need to go home to take my medication. I should not have to go through this to do my job." Plaintiff's supervisor did not respond to her text message.

Additionally, Plaintiff went to a CVS pharmacy immediately after sending the text message, where it was confirmed that her blood pressure was abnormally high, causing her to

3

have to be taken directly to her doctor's office. After Plaintiff was released by her doctor on March 21, 2019, to ensure UPS was aware of her medical issues caused by UPS's supervisor's discrimination and retaliation, she returned to the office to speak with Human Resources Representative [Kristian last name unknown]. As Plaintiff was speaking with Kristian, UPS supervisors Cornelius Jackson and Charles Davis told Plaintiff if she did take her routes on that day she would be terminated, even after she explained the circumstances surrounding her health and UPS's discriminatory conduct causing her health to decline.

Due to Plaintiff's issues with her stress, anxiety, and blood pressure—all of which were caused by UPS's supervisors, Plaintiff could not deliver her packages and was terminated—a termination that was subsequently retracted due to its unlawfulness. Due to UPS's unlawful discrimination, Plaintiff was forced to take short-term disability from March 22, 2019, until May 19, 2019. When Plaintiff returned, the retaliation continued.

Specifically, for roughly either (8) years prior to Plaintiff's March 5, 2019, complaint and subsequent reports of discrimination and retaliation, Plaintiff was performing her duties as a 22.3 driver with the two (2) above-referenced accommodations pursuant to a reasonable accommodation application that was approved by UPS in 2011. However, after Plaintiff made complaints of discrimination and retaliation, Plaintiff was advised that a larger truck was needed to make runs to the airport (Plaintiff's route) due to increased volume.

However, there was no true increase in volume and requiring the truck was done for the sole purpose of removing Plaintiff from her current position as a form of discrimination and retaliation because UPS's supervisors were well aware of Plaintiff's disabilities outlined in her 2011 ADA forms that made her unable to drive a larger truck.

When Plaintiff asked why this was occurring, she was told she would need to fill out

4

Case 3:21-cv-00336-MOC-DSC   Document 12   Filed 08/26/21   Page 4 of 6

another ADA reasonable accommodation request form for the exact same accommodations that UPS had already approved—the exact same accommodations with which Plaintiff had successfully performed her job since 2011.

Nevertheless, Plaintiff completed another ADA request for the exact same accommodations in 2019. Shockingly, UPS continued its blatant discrimination and retaliation against Plaintiff when it subsequently denied Plaintiff's ADA request for the exact same accommodations for the exact same position she had for eight (8) years. After unlawfully taking away Plaintiff's full-time position, UPS then offered Plaintiff a part-time position with a reduced pay rate. To date, UPS has denied Plaintiff her job and any similar job. Accordingly, on October 8, 2019, and December 12, 2019, Plaintiff filed Charges of Discrimination with the Equal Employment Opportunity Commission. On March 5, 2021, Plaintiff received right-to-sue letters.

## II. STANDARD OF REVIEW AND DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

Here, the Court finds that, given the lenient pleading standards of Iqbal and Twombly, the Court will deny the motion to dismiss at this time and hold it under consideration pending further development of the record.

### III. CONCLUSION

Defendant's motion is denied, pending further development of the record.

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss, (Doc. No. 5). is **DENIED**.

Signed: August 26, 2021

Max O. Cogburn Jr.
United States District Judge